UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| MICHAEL B. EASTER, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:17-cv-00031-GFVT |
| | ) |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| JASON HENDRIX, et al., | ) **&** |
| | ) **ORDER** |
| Defendants. | ) |
| | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants seek summary judgment as to Plaintiff Michael B. Easter's federal claims, brought pursuant to 42 U.S.C. § 1983, Kentucky Constitutional claims, and Kentucky state law claims. [R. 37.] For the reasons set forth below, the Court GRANTS the Defendants' motion.

**I**

On April 10, 2016 at approximately 2:30 a.m., Defendant-Officers Jason Hendrix and Austin Sasser were dispatched to an apartment located in Shelbyville, Kentucky in response to an excessive noise complaint. [R. 1 at 4; R. 37-2; R. 37-3.] The apartment was that of Plaintiff Michael B. Easter, where he resided with his mother, Elizabeth "Libby" Easter, and his twelve-year old daughter. [R. 1.] Libby Easter called the officers to their home because Mr. Easter was listening to music on his laptop computer at a high volume and refused to turn the music down. [R. 1; R. 37-2 at 1.] Upon Defendants' arrival at Mr. Easter's residence, Officer Hendrix knocked and Libby answered the door. [R. 1; R. 37-2; R. 37-3.] The parties disagree as to whether Libby invited the officers into the home, but both agree that upon arrival, Libby Easter

1

told the officers that the noise disturbance had ceased, and Mr. Easter told the Officers to "get the F out of my house." [R. 1; R. 37-1, R. 39.]

Upon entering the residence, Officer Hendrix heard what he described as "a person hyperventilating into a plastic bag." [R. 37-2.] Among continued protestations from Mr. Easter, Officer Hendrix sought the source of the noise, which turned out to be Mr. Easter's twelve-year-old daughter. *Id.* Officer Hendrix found Mr. Easter's daughter breathing heavily in her bedroom. [R. 37-2.] It is undisputed that she and Mr. Easter were involved in a disagreement prior to police being called to the home, but details of the disagreement are disputed. [R. 1 at 6; R. 38-2 at 2.] Mr. Easter asserts that his daughter "physically struck, shoved, and briefly confined" him. [R. 1 at 6.] The Officers conducted an interview with Mr. Easter's daughter outside of the presence of Mr. Easter, with Libby Easter's consent. [R. 1 at 7] Officers Hendrix and Sasser claim that the daughter informed them that Mr. Easter had "hit her in the face and pushed her on the bed causing her to hit her head on a mirror." [R. 38-2 at 2.] Officer Hendrix noticed redness on the right side of her face, and that she appeared to have a "bruise" or "knot" toward the back of her head. *Id.* Because Officer Hendrix believed that Mr. Easter's daughter needed medical evaluation, EMS was called to the apartment. *Id.*

At some point Mr. Easter was handcuffed in his home. [R. 39; R. 38-2.] The parties agree that officers informed Mr. Easter that he was not under arrest, and that the handcuffs were for his own safety. *Id.* Following the interview with Mr. Easter's daughter, the Defendants believed they had probable cause to arrest Mr. Easter for Assault in the Fourth Degree, Child Abuse, and Mr. Easter was informed he was under arrest. [*See* R. 1 at 7; R. 38-2 at 3.] The parties agree that Mr. Easter verbally protested as Officer Sasser escorted him to a police cruiser. [*See* R. 1 at 7; R. 38-2 at 3.] The Officers claim that Mr. Easter engaged in "violent, tumultuous,

and threatening behavior" such that he caused residents living in neighboring apartments to come to their doors to see what was going on outside. [R. 38-2 at 3.] Mr. Easter disputes this claim and says that no nearby residents came to investigate. [R. 39 at 2.]

Whatever occurred, Mr. Easter was subsequently charged with Disorderly Conduct in the Second Degree. [R. 1.] Mr. Easter was transported to Shelby County Detention Center and claims that, either during transport or booking at Shelby County Detention Center, Officer Sasser "grabbed the hood of the [Mr. Easter's] hoody and tightened it around his neck . . . and executed a chokehold that caused the [Mr. Easter] to lose consciousness." [R. 1 at 7–8.] At the time of booking, a Standard Medical Questions form was prepared by the Detention Center in which Plaintiff indicated that he was not in need of medical attention. [R. 37-2 at 12.] A photo taken during the booking process shows no sign of injury to Mr. Easter's neck or head. *Id.* at 13.

In a one-day jury trial on October 12, 2016, Mr. Easter was acquitted of the Assault in the Fourth Degree, Child Abuse charge and convicted of the offense of Disorderly Conduct in the Second Degree. [R. 1 at 9.] Mr. Easter subsequently filed this action on April 9, 2017 against Defendants Jason Hendrix, Austin Sasser, and Danny Goodwin, both individually and in their official capacities. Mr. Easter alleges violations of his Constitutional rights under the Fourth, Tenth and Fourteenth Amendments as well as §§ 10 and 11 of the Kentucky Constitution. [*See* R. 1.] Additionally, Mr. Easter brings Kentucky state law claims for malicious prosecution, false imprisonment, assault and battery, and outrage. *Id.* Defendants filed a Motion for Summary Judgment disputing these claims and putting forth the affirmative defense of qualified immunity. [R. 37-1.] Mr. Easter, now proceeding *pro se*, filed what he called a "Motion for Summary Judgment and Response to Defendant's Motion for Summary of Judgment." [R. 39.] The Defendants filed a reply to that motion, urging the Court to construe it as a Response to their

earlier motion for Summary Judgment, rather than as a cross-motion for Summary Judgment. [R. 43.]

## II

### A

As an initial matter, the Court takes up the issue of how to interpret Mr. Easter's motion. It is styled as "Plaintiff's Motion for Summary Judgment and Response to Defendant's Motion for Summary of Judgment." [R. 39.]

Generally speaking, filings by pro se litigants are construed liberally. *See Spotts v. United States*, 429 F.3d 248, 249 (6th Cir. 2005). Where a party is without representation, pro se pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

Even applying a liberal construction, Mr. Easter's motion [R. 39] falls short of the standard for a Motion for Summary Judgment. *See* Fed. R. Civ. P. 56. Mr. Easter's motion seeks no affirmative relief aside from asking the Court "to honorably block [Defendants'] motion as it is false." *Id.* To the extent he cites to the record, Mr. Easter directs the Court's attention to whole affidavits, as well as a video recording of the entirety of his day-long jury trial. [R. 39.] Mr. Easter puts forth no argument for Summary Judgment on his own behalf. *See id.* Accordingly, Mr. Easter's motion is most appropriately construed as a response to Defendants' Motion for Summary Judgment.

**B**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted). When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**C**

This case involves three Defendants, each of whom has been sued in both their official and individual capacities: Officer Danny Goodwin, Officer Jason Hendrix, and Officer Austin Sasser. [R. 1.] Defendants Hendrix and Sasser responded to Mr. Easter's home on April 10, 2016, but Officer Goodwin was not involved in responding to the call. [*See* R. 1.] Instead, Officer Danny Goodwin is sued in his individual and official capacity because he was, at the time, Chief of the Shelbyville Police Department, and therefore established policies which governed the employment, training, supervision and conduct of the officers of the Shelbyville Police Department. [R. 1; R. 9.]

The law is clear that any federal charges asserted against the Defendants in their official capacity are functionally equivalent to charges against the City of Shelbyville, because "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). This is because a plaintiff seeking to "recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id*. Thus, the City of Shelbyville is the true defendant, and Officers Goodwin, Hendrix, and Sasser are dismissed as defendants with respect to the pending federal and state law claims. *See Clark v. Kentucky*, 229 F. Supp. 2d 718, 721-22 (E.D. Ky. 2002) (dismissing official capacity claims). Summary judgment is GRANTED in favor of the Defendants on all claims made against them in their official capacity.

**D**

There are nine remaining claims against Officers Goodwin, Hendrix and Sasser in their

individual capacities in this action. [R. 1.] Defendants oppose these claims on substantive grounds as well as on the basis they are entitled to qualified immunity.

1

Mr. Easter claims that Defendants' actions on April 10, 2016 violated his Fourth Amendment rights first by the warrantless unlawful entry and search of his residence, and second by his unlawful arrest. *Id.* Defendants deny that any constitutional violation occurred, and in the alternative, that they are entitled to qualified immunity. We first consider Mr. Easter's claim that Officer Goodwin violated his Fourth Amendment rights.

Supreme Court precedent explains that a government official can only be individually liable if he "caused the deprivation of a right." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To establish such liability, "[a]t a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993) (citation omitted). Mr. Easter has not shown that Officer Goodwin had any direct involvement in the activities giving rise to this action, and it is undisputed that Officer Goodwin was not present at Mr. Easter's residence on April 10, 2016. [R. 1; R. 9]. Although parties agree that part of Officer Goodwin's position included "establish[ing] policies which governed the employment, training, supervision and conduct of the officers of the Shelbyville Police Department," Mr. Easter has not presented to the Court any facts tending to show that such policies implicitly or explicitly authorized or condoned a violation of his Constitutional rights. [R. 1; R. 9.] The Court, accordingly, finds that Mr. Easter has not demonstrated the existence of a material fact regarding Officer Goodwin's liability. Summary judgment is GRANTED for the Defendants on this claim.

Next, Mr. Easter's claims that Officers Hendrix and Sasser unlawfully entered his home

in violation of his Fourth Amendment Rights. "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). However, "[e]ntrance by the police into a home—which constitutes a search for Fourth Amendment purposes—is permissible . . . where justified by a warrant, exigent circumstances, or valid consent." *Smith v. City of Wyoming*, 821 F.3d 697, 709 (6th Cir. 2016); *see also Payton*, 445 U.S. at 490. "Consent may lawfully permit the police to enter even if it is not given by the occupant whose Fourth Amendment rights are at issue." *Smith v. City of Wyoming*, 821 F.3d 697, 709 (6th Cir. 2016). Further, consent need not be explicit or even verbal, and may be in the form of "words, gesture, or conduct." *Id.* at 709. (citing *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc)). Because the language of § 10 of the Kentucky Constitution is meant to provide protection equal to that of the Fourth Amendment with respect to this issue, the Court will analyze them together. *See LaFollete v. Commonwealth*, 915 S.W.2d 747 (Ky. 1996).

In the case at hand, Officers Hendrix and Sasser admit they were without a warrant, and no argument is made that there were exigent circumstances present justifying their warrantless entry. *See* [R. 9; 37-2; 37-3.] Rather, the Defendants contend that Libby Easter consented to their entry of her home. [R. 37-2; 37-3.] The Defendants cite to their own affidavits, which state that Libby Easter "answered the door and motioned [the Officers] inside." [R. 37-2; R. 37-3.] Mr. Easter disputes this claim. [R. 1; R. 39.] In disputing this, Mr. Easter makes no citation to the record or anything that would bolster his version of the facts. According to the Federal Rules of Civil Procedure:

> a party asserting that a fact … is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

> stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Mr. Easter has failed to show that there exists a genuine dispute as to the material fact of whether the Defendants had consent to search the home. In fact, Mr. Easter cites only to Defendants' own affidavits and the entirety of a video recording documenting the day-long jury trial he underwent. [R. 39.] This court is not required to dig through the record to ascertain whether some part of it might support Mr. Easter's position. *See Penn, LLC v. Prosper Bus. Dev. Corp.*, 600 F. App'x 393, 403 (6th Cir. 2015) ("'Judges are not like pigs, hunting for truffles' that might be buried in the record") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Similarly, even construing the facts in the light most favorable to the non-movant, the Court is not required to take Mr. Easter's unsworn accusations, without more, as true. *See Whitehead v. Bowen*, 301 Fed. Appx. 484, 489 (6th Cir. 2008). Therefore, summary judgment is GRANTED to the Defendants on this claim.

Mr. Easter next raises a claim of unlawful arrest. While it is undisputed that Mr. Easter was arrested, "seizure alone is not enough for § 1983 liability." *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). To be lawful, an arrest must be accompanied by probable cause. Probable cause is determined by "whether, at the time of the arrest, the 'facts and circumstances within [the arresting officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

9

Probable cause does not require "any showing that [an officer's] belief [is] correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Generally, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)). Nevertheless, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir.1996) (citation omitted).

Applying the test for qualified immunity, to simply state that the Fourth Amendment right to be free from unreasonable searches and seizures is clearly established would be the definition of "defin[ing] clearly established law at a high level of generality." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2013 (2014). Instead, the dispositive question is whether a reasonable officer could have believed that a warrantless arrest of Mr. Easter was lawful under the circumstances that Officers Hendrix and Sasser faced. This requires a fact-intensive inquiry, "limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (citing *White v. Pauly*, 137 S. Ct. 548, 550 (2017)).

At the time of Mr. Easter's arrest, the record indicates that Officers Hendrix and Sasser knew the following, undisputed facts: (1) Somebody inside the residence had called the police in order to summon law enforcement to Mr. Easter's address; (2) there were sounds of somebody "breathing into a plastic bag" inside the house [R. 37-2]; (3) Mr. Easter's twelve year old daughter was inside the house [R. 1; R 37-2]; (4) breathing and crying sounds heard by the

10

officers were coming from Mr. Easter's daughter; (5) Mr. Easter was yelling and interfering with the Defendants' ability to speak with his daughter; (6) she had redness on the side of her face and what appeared to be a "bruise" or "knot" on the back of her head; (7) there was some disagreement and physical altercation between Mr. Easter and his daughter prior to the Officers' arrival, though the details of that interaction are disputed; and (8) Mr. Easter's daughter told Officers Hendrix and Sasser that Mr. Easter hit her, that he had hit her before, and that she was afraid of him. [*See* R. 1; R. 9; R. 37-2; R. 39.]

Taken together, and even viewing these facts in the light most favorable to Mr. Easter, it is this Court's conclusion that Officers Hendrix and Sasser had probable cause to arrest Mr. Easter on a charge of Assault in the Fourth Degree, Child Abuse. Further, even if Officers Hendrix and Sasser were mistaken as to the existence of probable cause to arrest, they are entitled to qualified immunity. Confronted with the aforementioned facts, this Court believes it would *not* "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (citing *Katz*, 533 at 202). In situations where law enforcement officers mistakenly but reasonably conclude that probable cause for arrest exists, they should not be held personally liable; such is the purpose of the qualified immunity doctrine. *See Anderson v. Creighton*, 483 U.S. 639, 641 (1987). Here, it is not even clear that they were mistaken.

Therefore, the court GRANTS summary judgment on this claim to the Defendants.

2

Mr. Easter's next claim is that Officers Hendrix and Sasser used unreasonable, excessive force against him in violation of the Fourth Amendment and § 10 of the Kentucky Constitution. In his complaint, Mr. Easter alleges "Officer Hendrix or Officer Sasser grabbed the hood of the

Plaintiff's hoody and tightened it around his neck from behind . . . and executed a chokehold that caused the Plaintiff to lose consciousness." [R. 1.]

The legality of the arrest has nothing to do with the question of excessive force. Determining whether force is excessive requires a balancing between "the nature and quality of the intrusion on the individual" and "the countervailing governmental interests at stake." *Slusher v. Carson*, 540 F.3d 449, 255 (6th Cir. 2008). But the Court does not need to reach the balancing test in the case at hand. The Court is not bound to accept the unsworn allegations made in Mr. Easter's complaint as true for the purposes of summary judgment. *See Whitehead v. Bowen*, 301 Fed. Appx. 484, 489 (6th Cir. 2008). The Court does not wish to make light of or condone the use of force that is alleged to have been used against Mr. Easter, if it occurred. But beyond the allegation contained in his complaint, Mr. Easter makes no further citation to the record that would allow the Court to find a genuine dispute of fact as to this issue. [*See* R. 1; R. 39.] Rather, the record as cited by the Defendants seems to support that no genuine dispute exists. [*See* R. 37.] Summary judgment is GRANTED for Defendants on Mr. Easter's excessive force claim.

## 3

### a

Next, Mr. Easter makes a claim of false imprisonment in violation of his Fourth Amendment rights and his rights under § 10 of the Kentucky Constitution, as well as the state law tort of False Imprisonment. These claims arise out of the cuffing that took place in his home as well as his eventual arrest.

"A law enforcement officer is liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual." *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). A

law enforcement officer has such a privilege when the arrest is pursuant to a warrant, or when "the officer has probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it." *Id.* (internal citations omitted). Similarly, to recover for the tort of False Imprisonment in Kentucky, Mr. Easter must show "that [he] was detained and that the detention was unlawful." *Wal-Mart Stores v. Mitchell*, 877 S.W.2d 616, 617 (Ky. Ct. App. 1994).

Probable cause exists where the facts are "sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008). Further, the use of handcuffs is not necessarily dispositive of arrest. In some instances, circumstances warrant the use of handcuffs in an investigative stop. *See United States v. Foster*, 376 F.3d 577 (6th Cir. 2004). The Kentucky Supreme Court has likewise found that handcuffing during an investigative *Terry* stop does not always mean one is the official custody of law enforcement. *See Taylor v. Commonwealth*, 182 S.W.3d 521 (Ky. 2006).

In the case at hand. Officer Hendrix and Sasser were dispatched to Mr. Easter's residence in response to a phone call made by his mother, Libby Easter. [R. 1.] Upon arrival, Defendants contend, and Mr. Easter has not effectively disputed, that they were invited into the residence. [R. 37.] Upon entering, Officer Hendrix heard what sounded like a person in distress. [R. 37.] Throughout their investigation into the source of the sound, Mr. Easter acted belligerently and cussed at the Defendants to "get the F out of [his] house." [*See* R. 1; R. 39.] Mr. Easter's daughter eventually told the Defendants that Mr. Easter had hit her, that he had hit her before, and that she was afraid of him. At some point, the Defendants handcuffed Mr. Easter for his own

safety and the safety of others in the home, and so they could continue their investigation and interview with his daughter.  [*See* R. 1; R. 37.]

These are the facts known by Officers Hendrix and Sasser when they initially handcuffed Mr. Easter.  Qualified immunity analysis requires they be taken into consideration in determining whether the Defendants are liable for this conduct.  Therefore, the dispositive question is whether a reasonable officer would have believed that the use of handcuffs to detain a belligerent parent in order to conduct an interview with a possible victim of child abuse was lawful.  *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2013 (2014); *see also Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017).  Although what occurred in Mr. Easter's home was not a *Terry* investigative stop, it is analogous.  The Defendants detained Mr. Easter to prevent him from harming himself, the Defendants, or his family members, just long enough conduct an investigation of the alleged child abuse.  Officers Hendrix and Sasser are entitled to qualified immunity, and summary judgment is GRANTED for the defendants on this count.

The Court now turns to Mr. Easter's eventual, explicit arrest. As explained in II.D.1, *supra*, this Court finds that Officers Hendrix and Sasser had probable cause to arrest Mr. Easter on a charge of Assault in the Fourth Degree, Child Abuse, and even if they were mistaken as to the existence of probable cause, they are entitled to qualified immunity.  Because it was reasonable for Officers Hendrix and Sasser to find probable cause to arrest in light of the facts before them, summary judgment on this claim is GRANTED for the defendants.

**4**

**a**

Additionally, Mr. Easter argues that his Fourth Amendment right to be free from malicious prosecution was violated.  [R. 1.]  To prevail on his malicious prosecution claim, Mr.

Easter must show (1) that a criminal prosecution was initiated against him and that the defendants made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of the legal proceeding, Mr. Easter suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding was resolved in his favor. *See Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Where a malicious prosecution claim is alleged against an officer, "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Sykes v. Anderson*, 625 F.3d 294, 315 (6th Cir. 2010).

Mr. Easter meets his burden with regard to prongs one and four; it is undisputed that a criminal prosecution was initiated against Mr. Easter on the charge of Assault in the Fourth Degree, Child Abuse, and that the proceeding was resolved in his favor when he was acquitted of that charge in trial. However, Mr. Easter has presented no evidence that Officers Hendrix and Sasser in any way "conspired with, influenced, or even participated in" the Kentucky state court's decision to prosecute. *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005). The only evidence Mr. Easter presents of wrongdoing is an accusation that the Defendants are, in general, "consistent liars." [R. 39]. Officers Hendrix and Sasser "cannot be held liable for malicious prosecution [when] they did not make the decision to prosecute," and where the conduct, as alleged, amounts to nothing more than "turn[ing] over to the prosecution the officer's truthful materials." *Id.* (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002); *Sykes v. Anderson*, 625 F.3d 294, 315 (6th Cir. 2010).

Furthermore, Mr. Easter's claim also fails on prong two of the four-part test. As discussed, *supra*, the facts that were known to Officers Hendrix and Sasser at the time of arrest

15

establish that the officer had probable cause to arrest Mr. Easter for Assault in the Fourth Degree, Child abuse. Therefore, summary judgment on this claim is GRANTED in favor of the defendants.

### b

Mr. Easter also asserts a Kentucky law claim for malicious prosecution against the Defendants. [R. 1.] Recently the Kentucky Supreme Court set forth a revised test for malicious prosecution. *See Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016) (abrogating *Raine v. Drasin*, 621 S.W.2d 895 (1981)). Now, to prevail on his state law malicious prosecution claim, Mr. Easter must show:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
2) the defendant acted without probable cause;
3) the defendant acted with malice which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;
4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and
5) the plaintiff suffered damages as a result of the proceeding.

*Martin*, 507 S.W.3d at 11–12. As explained above, Mr. Easter has failed to establish that the defendants acted both with malice, and without probable cause. Therefore, the defendants' motion for summary judgment on the state law claim of malicious prosecution is GRANTED.

### 5

Mr. Easter claims that the force used during his arrest also amounts to assault and battery under Kentucky State law. Assault and battery are two separate and distinct legal claims. "Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct.

App. 2001). A law enforcement officer who uses a reasonable amount of force in making an arrest has not committed a battery. *See City of Lexington v. Gray*, 499 S.W.2d 72 (Ky. 1973).

Presumably, Mr. Easter bases this claim on his allegation that either Officer Hendrix or Officer Sasser "grabbed the hood of the [his] hoody and tightened it around his neck . . . and executed a chokehold that caused the Plaintiff to lose consciousness." [R. 1 at 7–8.] The defendants deny this allegation and point to the record, arguing that neither the medical form from booking nor the booking photograph taken at Shelby County Detention Center indicate Mr. Easter sustained or required medical treatment for such an injury. *See* [R. 37.] Beyond the allegation made in his complaint, Mr. Easter has cited to nothing that would tend to show this incident actually occurred, and in fact other documents in the record seem to indicate otherwise. [R. 1.] Indeed, he makes no further reference this alleged use of excessive force in his Response to Defendants' Motion for Summary Judgment. [R. 39.] Summary judgment is GRANTED in favor of defendants on this count.

**6**

Mr. Easter's final claim arises under the tort of intentional infliction of emotional distress, otherwise known in Kentucky as the tort of outrage. The Kentucky Supreme Court has said "where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993)).

In the instant case, Mr. Easter has not put forth facts that would show that Officers Hendrix or Sasser were motivated by an intent to cause emotional distress in Mr. Easter.

Similarly, the conduct Mr. Easter alleges against the defendants falls more squarely into the traditional torts of assault or battery. Therefore, Summary judgment is GRANTED to the defendants on this claim.

7

As a final housekeeping matter, the Court would point out that Mr. Easter's complaint alleged violations of § 11 of the Kentucky Constitution. Section 11 is titled with "Rights of Accused in Criminal Prosecution–Change of Venue." Ky. Const. § 11. Mr. Easter has not addressed any causes of action arising under this section of the Kentucky Constitution, and the Court finds none. Therefore, summary judgment is GRANTED to Defendants on claims arising under § 11 of Kentucky's Constitution.

III

It is understandable that Mr. Easter might feel frustrated with the way he was treated by law enforcement in light of the verdict in his jury trial. But a lawful arrest and prosecution does not suddenly become unlawful just because the defendant is acquitted. Likewise, not every unlawful arrest subjects the arresting officer to personal liability via a §1983 claim. Finally, although the Court does not condone use of force against arrestees such that they lose consciousness as alleged in Mr. Easter's Complaint, there is simply not enough evidence aside from this allegation present in the record to survive Defendants' motion for Summary Judgment.

For the foregoing reasons and being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Plaintiff's Motion for Summary Judgment and Response to Defendants' Motion for Summary Judgment shall be construed as a Response to Defendants' Motion for Summary Judgment;

2. Defendants' Motion for Summary Judgment [R. 37] is **GRANTED** as to all counts;

3. Judgment in favor of Defendants shall be entered contemporaneously herewith.

This the 23d day of October, 2018.

Gregory F. Van Tatenhove
United States District Judge